UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTIONETTE SLAUGHTER,<br><br>Plaintiff,<br><br>v.<br><br>VALLEY VIEW I LLP, et al.,<br><br>Defendants. | CASE NO. C23-1360JLR<br><br>ORDER |

## I.   INTRODUCTION

Before the court is Plaintiff Antionette Slaughter's complaint against Valley View I LLP ("Valley View"), King County Housing Authority ("KCHA"), school principal Ivory D. Brooks, Seattle Public Schools, and Seattle Mayor Bruce Harrell.  (Compl. (Dkt. # 4).)  Ms. Slaughter is proceeding *pro se* and *in forma pauperis* ("IFP").  (*See generally id.*; IFP Order (Dkt. # 3).)  Under 28 U.S.C. § 1915(e)(2), district courts have authority to review IFP complaints and must dismiss them if "at any time" it is determined that a complaint fails to state a claim on which relief may be granted.  28 U.S.C.

1 § 1915(e)(2)(B)(ii); *see also id.* § 1915A(b)(1); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th
2 Cir. 2000) (clarifying that § 1915(e) applies to all IFP proceedings, not just those filed by
3 prisoners).  The court has considered Ms. Slaughter's complaint and determined that the
4 allegations therein fail to state a claim upon which relief can be granted.  Accordingly,
5 the court DISMISSES Ms. Slaughter's claims without prejudice and with leave to amend.

## II.   BACKGROUND

Ms. Slaughter initiated this action based on an apparent dispute with Valley View, the management company of her apartment building, and its employees.  (*See, e.g.*, Compl. at 6, 9-14, 26-27, 36-37.[1])  Ms. Slaughter alleges Valley View and its employees have subjected her to harassment, retaliation, and discrimination—including by commencing eviction proceedings against her—in response to a fair housing complaint she lodged with the U.S. Department of Housing and Urban Development ("HUD") and various other government agencies.  (*Id.* at 6, 9-14, 43-45.)  Ms. Slaughter also alleges that Valley View and its employees engaged in "[u]nfair, abusive, and deceptive management practices," "[r]ight to privacy violations," "[h]ostile living [e]nvironment," "[e]motional [a]buse," "[p]oor communication," and "falsifying documents."  (*Id.* at 26-27, 36-37, 39.)  Ms. Slaughter raises additional claims against KCHA, Mayor Harrell, Mr. Brooks, and Seattle Public Schools either for "[c]onflict of [i]nterest" under RCW 43.160.040 or for "[f]ostering discriminatory conduct."  (*Id.* at 3, 34-35, 38.)  Generally, Ms. Slaughter brings her claims under 42 U.S.C. § 1983, alleging the Defendants violated

---

[1] The court refers to the page number in the CM/ECF header when citing to Ms. Slaughter's complaint.

her equal protection rights under the Fourteenth Amendment. (*Id.* at 5.) The court also construes Ms. Slaughter's complaint as raising discrimination and retaliation claims under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-19, 3631. Ms. Slaughter requests damages in the amount of $100,000,000. (*Id.* at 7.)

### III.   ANALYSIS

The court begins by setting forth the legal standards governing dismissal before turning to its analysis of Ms. Slaughter's complaint, addressing certain groups of Defendants in turn.

**A.    Legal Standard**

28 U.S.C. § 1915(e)(2)(B)(ii) authorizes a district court to dismiss a claim filed IFP "at any time" if it determines the action "fails to state a claim upon which relief may be granted." Because Ms. Slaughter is a *pro se* Plaintiff, the court must construe her pleadings liberally. *See McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992). Nonetheless, her complaint must still contain factual allegations "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the pleading standard announced by Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (requiring the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see* Fed. R. Civ. P. 8(a).

**B.     Valley View**

The court first addresses Ms. Slaughter's claims against Valley View.  Construing the complaint liberally, the court determines that, in addition to her Fourteenth Amendment claim under 42 U.S.C. § 1983, Ms. Slaughter raises retaliation and discrimination claims under the FHA, 42 U.S.C. §§ 3604, 3617.  (*See* Compl. at 6, 9-12, 14.)  For the reasons discussed below, the court concludes that Ms. Slaughter has failed to plead sufficient facts in support of her claims against Valley View and those claims are therefore DISMISSED without prejudice and with leave to amend.

        1.   FHA Retaliation

The FHA protects individuals from certain types of retaliatory conduct by making it "unlawful to coerce, intimidate, threaten, or interfere with any person . . . on account of his having exercised or enjoyed, . . . any right granted or protected" by the FHA.  42 U.S.C. § 3617.  To state a retaliation claim, a plaintiff must show that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and adverse action.  *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

Regarding the first *Walker* element, "a 'protected activity' must relate to the exercise of an individual's housing rights 'granted or protected by section 3603, 3604, 3605, or 3606' of the FHA."  *Smith-Jeter v. Artspace Everett Lofts Condo. Ass'n*, No. C14-1584-JPD, 2016 WL 898543, at *6 (W.D. Wash. Nov. 19, 2018) (quoting 42 U.S.C. § 3617).  Examples of protected activities include filing a formal HUD complaint and requesting a reasonable accommodation for disability.  *Id.* at *4 n.6 (collecting cases).

As to the second element, an "adverse action" must be in the form of coercion, intimidation, threats, or interference. *Walker*, 272 F.3d at 1128 (quoting 42 U.S.C. § 3617). An eviction proceeding by a defendant against a tenant plaintiff may be an adverse action. *Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS, 2018 WL 2933467, at *20 (S.D. Cal. June 12, 2018). With respect to the third element, the plaintiff must plead facts "sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer*, 686 F.2d 793, 796 (9th Cir. 1982). "Temporal proximity between protected activity and an adverse action can in some cases constitute sufficient circumstantial evidence of retaliation." *Hardy v. Broadway Ests. Mobile Home Park LLC*, No. CV17-03951-PHX-DGC, 2019 WL 5719210, at *4 (D. Ariz. Nov. 5, 2019) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (stating that the temporal proximity must be "very close" (internal quotation marks omitted))); *see also Garcia v. City of Everett*, 728 F. App'x 624, 628 (9th Cir. 2018) ("Courts have held 'very close' temporal proximity to mean that 1.5 months is sufficient whereas three and four months is too long.").

  Here, Ms. Slaughter claims that she filed complaints regarding Valley View to various government agencies, including HUD. (Compl. at 9-10, 43-45.) She further alleges that Valley View staff retaliated against her for filing these complaints in several ways, for example by commencing eviction proceedings, denying her request for reasonable accommodations, and engaging in harassing behavior. (*Id.* at 10, 14, 26.) Ms. Slaughter engaged in a protected activity when she submitted a formal complaint to HUD. *See Smith-Jeter*, 2016 WL 898543, at *6. However, Ms. Slaughter fails to include

specific factual allegations regarding when she filed her various complaints and the subject matter of those complaints. Although she attached several incomplete documents to her complaint that appear to relate to her HUD complaint (*see, e.g.*, Compl. at 12, 43-44, 48), Ms. Slaughter neither explains what these documents are nor provides complete copies of these documents. Ms. Slaughter appears to rely on the court to sort through her complaint and partial documents to try to identify the relevant facts. Although a *pro se* litigant like Ms. Slaughter is entitled to leeway when the court construes her pleadings, *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995), it is not the court's duty to sort through Ms. Slaughter's complaint and documents in order to piece together the basis of her claim. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (reciting the "now familiar maxim, '[j]udges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))). In particular, the court cannot determine from the complaint whether a causal link could exist between Ms. Slaughter's protected activity and any adverse action by Valley View. *See Walker*, 272 F.3d at 1128; *see also Hardy*, 2019 WL 5719210, at *4 (explaining how temporal proximity and dates are relevant to the causal link element of a prima facie retaliation claim). Because Ms. Slaughter fails to provide sufficient detail of the facts supporting her retaliation claim, this claim is DISMISSED without prejudice. If Ms. Slaughter wishes to continue pursuing her retaliation claim under the FHA, she must specify the dates on which she and Defendants took the relevant actions and describe what actions they took. And if Ms. Slaughter wishes to include documents in her

complaint, she must attach complete documents with a short explanation of what each document is.

2. FHA Discrimination

The FHA protects individuals from various forms of housing discrimination. *See* 42 U.S.C. § 3604. A plaintiff can establish a discrimination claim under either a theory of disparate treatment or disparate impact. *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999); *see also Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015) (affirming that disparate impact claims are cognizable under the FHA). Disparate treatment cases concern intentional discrimination whereas disparate impact claims challenge "practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Tex. Dep't of Hous. & Cmty. Affairs*, 576 U.S. at 524 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). To establish a prima facie case of disparate treatment, a plaintiff must show: "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Id.* The prima facie case must also include a showing that "plaintiff is a member of a protected class." *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997). To establish a prima facie case of disparate impact, on the other hand, a plaintiff must establish: "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Id.* (quoting *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745 (9th Cir. 1996)) (holding plaintiff failed to establish a prima facie

1 case "because he has presented no statistics or other proof demonstrating that the City's
2 permit practices have a significantly adverse or disproportionate impact on the physically
3 disabled or elderly").

4       Here, Ms. Slaughter simply claims "I have been discriminated against for
5 exercising my right to file a complaint." (Compl. at 9.) Ms. Slaughter neither alleges
6 intentional discrimination based on her membership in a protected class, nor does she
7 describe any neutral policy that adversely and disproportionately affected her based on
8 her membership in a protected class. Accordingly, Ms. Slaughter's bare allegation fails
9 to establish a prima facie case of discrimination and this claim is DISMISSED without
10 prejudice and with leave to amend. If Ms. Slaughter wishes to continue pursuing a
11 discrimination claim under the FHA, she must provide additional facts showing that she
12 belongs in a class of persons protected under the FHA and that she is entitled to relief
13 under either a disparate treatment or disparate impact theory. *See Harris*, 183 F.3d at
14 1051.

15       3. <u>42 U.S.C. § 1983</u>

16       Ms. Slaughter's Fourteenth Amendment claim under § 1983 against Valley View
17 fails as a matter of law because Ms. Slaughter fails to allege facts demonstrating that
18 Valley View, a private entity, acted under color of state law when engaging in the
19 conduct complained of. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff
20 must show: (1) that the conduct complained of was committed by a person acting under
21 color of state law; and (2) that the conduct deprived the plaintiff of a right secured by the
22 Constitution and laws of the United States. *See Naffe v. Frey*, 780 F.3d 1030, 1035-36

(9th Cir. 2015). Dismissal of a § 1983 claim "is proper if the complaint is devoid of factual allegations that gave rise to a plausible inference of either element." *Id.* at 1036. Regarding the first element, courts generally presume that private individuals do not act "under color of state law" within the meaning of § 1983. *See Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) (citing *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)). Nevertheless, private parties may be held liable under § 1983 if a plaintiff shows that their "conduct allegedly causing the deprivation of a federal right [was] fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

"'The Supreme Court has articulated four tests for determining whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002)). First, "[u]nder the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations.'" *Lee v. Katz*, 276 F.3d 550, 553-54 (9th Cir. 2002) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)) (holding a private entity engaged in a public function by regulating free speech on property leased from the City of Portland). Second, "[t]he joint action test asks whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao*, 698 F.3d at 1140 (quoting *Franklin*, 312 F.3d at 445) (holding a private entity engaged in joint action

because its security guards operated under a "system of cooperation and interdependence with" the Las Vegas Police Department). Third, "[s]tate action may be found under the state compulsion test where the state has 'exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the State.'" *Johnson v. Knowles*, 113 F.3d 1114, 1119 (9th Cir. 1997) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)) (finding no state action under state compulsion test where homosexual plaintiffs argued that a California law compelled a political committee to oust them, where the law merely authorized removal of members). Finally, under the nexus test, the court considers whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974) (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 723 (1961) (holding sufficient nexus existed where a private coffee shop leased space from a publicly-owned parking garage and served garage clientele)).

Here, Valley View appears to be a private entity (*see* Compl. at 2) and thus is presumed not to act "under color of state law" within the meaning of § 1983. Ms. Slaughter's complaint is devoid of allegations that, if taken as true, show that Valley View's conduct was "fairly attributable to the State." *Lugar*, 457 U.S. at 937. At most, Ms. Slaughter alleges Valley View discriminated against her based on her complaint to various public agencies that "receive federal[] funding." (Compl. at 9.) Notably, Ms. Slaughter does not allege that Valley View itself receives public funding. Accordingly,

1 this allegation alone is insufficient to establish that Valley View's conduct amounts to
2 state action under any articulation of the term. *See Rendell-Baker v. Kohn*, 457 U.S. 830,
3 831, 840 (1982) (holding that under the circumstances, even a private school's "receipt of
4 public funds does not make the [school's conduct] acts of the State"). If Ms. Slaughter
5 wishes to continue pursuing § 1983 claims against Valley View, she must establish,
6 among other things, that Valley View's conduct amounts to state action under one of the
7 four above-mentioned tests. *See Tsao*, 698 F.3d at 1140 (stating that a § 1983 plaintiff
8 has the burden to plead and prove state action by a private defendant).

9 **C.     KCHA and Seattle Public Schools**

10        Ms. Slaughter's Fourteenth Amendment claims against KCHA and Seattle Public
11 Schools fail as a matter of law because these are not proper Defendants in a § 1983
12 action. Generally, a municipal body is not a "person" within the meaning of § 1983. *See*
13 *Hervey v. Estes*, 65 F.3d 784, 791-92 (9th Cir. 1995); *see also Rodriguez v. Cnty. Of*
14 *Contra Costa*, No. C 13-02516 SBA, 2013 WL 5946112 (N.D. Cal. Nov. 5, 2013)
15 ("Although municipalities, such as cities and counties, are amenable to suit under
16 *Monell*,[2] sub-departments or bureaus of municipalities . . . are not generally considered
17 'persons' within the meaning of § 1983." (citing *Hervey*, 65 F.3d at 791)). Therefore,
18 KCHA and Seattle Public Schools are improper parties in this action.
19        Even if these Defendants were proper parties, Ms. Slaughter fails to allege
20 sufficient facts to survive dismissal. A local government unit or municipality, such as the

---

[2] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

City of Seattle or King County, can be sued as a "person" under § 1983. *Monell*, 436 U.S. at 690. However, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury, and must demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injury alleged. *Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 694). Here, Ms. Slaughter does not allege any factual allegations related to the official policies or customs of Seattle or King County. Instead, she merely alleges that "Seattle Public Schools staff is responsible for indirect retaliation [sic]" (Compl. at 6), and that "KCHA staff are aware of discrimination tak[ing] place, [and] as a result they have failed to conduct [an] annual inspection to ensure overall safety" (Compl. at 35). These bare allegations of indirect harm do not demonstrate deliberate wrongdoing as a result of policy or custom within the City of Seattle or King County. If Ms. Slaughter wishes to pursue a claim against these entities, she must clearly identify the custom or policy that she intends to challenge, and she must also set forth clear and specific facts demonstrating that the challenged custom or policy was the "moving force" behind the alleged constitutional harm. *See Monell*, 436 U.S. at 690-94.

**D.    Mayor Harrell and Mr. Brooks**

Ms. Slaughter's Fourteenth Amendment claims against Mayor Harrell and Mr. Brooks similarly must be dismissed for failure to state a claim. In order to state a claim for relief under § 1983, a plaintiff must show: (1) that she suffered a violation of rights protected by the Constitution or created by federal statute; and (2) that the violation was proximately caused by a person acting under color of state law. *See Crumpton*, 947 F.2d

at 1420. To satisfy the causation element of the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable solely based on supervisory responsibility or position. *Monell*, 436 U.S. at 691-94. Rather, the plaintiff must allege a defendant's own conduct violated his civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989). Here, the complaint names Mayor Harrell and Mr. Brooks as Defendants but fails to provide any facts regarding the acts they allegedly committed that Ms. Slaughter contends violated her rights. (*See generally* Compl.) Plaintiff's broad and conclusory allegations do not set forth sufficiently individualized and specific facts upon which a claim for relief may be granted.[3]

**E.     Leave to Amend**

A district court should not dismiss a *pro se* complaint "without leave to amend 'unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam)). Although Ms. Slaughter has failed to plausibly plead her claims, the court cannot conclude that "it is

---

[3] To the extent Ms. Slaughter raises a claim as to Mayor Harrell, Mr. Brooks, or Seattle Public Schools under RCW 43.160.040 (*see* Compl. at 34), that statute, by its plain language, does not create a private cause of action. *See* RCW 43.160.040 (providing that no public board member may participate in any decision authorizing public loans or grants to a recipient in which the board member has an interest). Even if RCW 43.160.040 could be read to create a private cause of action, Ms. Slaughter fails to allege sufficient facts demonstrating a statutory violation and her entitlement to relief.

ORDER - 13

1  absolutely clear that the deficiencies of the complaint could not be cured by amendment."

2  *Id.* at 1212. Thus, the court GRANTS Ms. Slaughter leave to file an amended complaint

3  that cures the deficiencies identified above. If she does so, she must name defendants

4  capable of being sued under § 1983 and set forth factual allegations that establish her

5  right to relief against such defendants under § 1983 and the FHA. Ms. Slaughter shall

6  file her amended complaint, if any, no later than **October 26, 2023**. If Ms. Slaughter

7  fails to timely comply with this order or fails to file an amended complaint that remedies

8  the deficiencies discussed in this order, the court will dismiss her proposed complaint

9  without leave to amend and close this case.

absolutely clear that the deficiencies of the complaint could not be cured by amendment."

*Id.* at 1212. Thus, the court GRANTS Ms. Slaughter leave to file an amended complaint that cures the deficiencies identified above. If she does so, she must name defendants capable of being sued under § 1983 and set forth factual allegations that establish her right to relief against such defendants under § 1983 and the FHA. Ms. Slaughter shall file her amended complaint, if any, no later than **October 26, 2023**. If Ms. Slaughter fails to timely comply with this order or fails to file an amended complaint that remedies the deficiencies discussed in this order, the court will dismiss her proposed complaint without leave to amend and close this case.

## IV. CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

(1) Ms. Slaughter's complaint (Dkt. # 4) is DISMISSED without prejudice and with leave to amend. She must file an amended complaint, if any, by no later than **October 26, 2023**;

(2) The Clerk is directed to send copies of this order to Ms. Slaughter and to the Honorable Michelle L. Peterson.

Dated this 4th day of October.

JAMES L. ROBART
United States District Judge